## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARYJANE L.,[1]                                      ) | |
|                                                      ) | |
|         **Plaintiff,**                       ) | |
|                                                      ) | **CIVIL ACTION** |
| **v.**                                               ) | |
|                                                      ) | **No. 20-1136-JWL** |
| **ANDREW M. SAUL,**                                  ) | |
| **Commissioner of Social Security,**                 ) | |
|                                                      ) | |
|         **Defendant.**                      ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614 of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) consideration of fibromyalgia as a medically determinable impairment (MDI) in this case, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.    Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed an application for SSI benefits on August 2, 2017.  (R. 12).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in considering fibromyalgia and in finding it is not an MDI in the circumstances of this case.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in the order they would be reached in applying the sequential evaluation process.

## II.     Step Two Consideration of Fibromyalgia

Plaintiff claims the ALJ erred in her consideration whether Plaintiff's fibromyalgia is an MDI in this case because she failed to consider the third factor of the second criterion provided in Soc. Sec. Ruling (SSR) 12-2p for the evaluation of fibromyalgia. (Pl. Br. 11).  Plaintiff argues that she was diagnosed with fibromyalgia by Dr. Johnson and by her gynecologist and primary care physician.  Id. at 12.  She argues that although "the ALJ indicated that she considered the symptoms related to fibromyalgia as they pertained to the other severe impairments, such a conclusory statement fails to adequately address fibromyalgia as its own impairment in the RFC assessment."  Id. at 15 (citing J.M.V. v. Berryhill, No. 18-1202-JWB, 2019 WL 2393165, at *4 (D. Kan. June 6, 2019)

(the court held that it could not say that "the undiscussed evidence and diagnoses pertaining to fibromyalgia could not possibly have affected the ALJ's conclusions about the severity of Plaintiff's symptoms, including pain, and their limiting effects.").

Plaintiff argues that all three factors of the second criterion of SSR 12-2p are met and, thus, fibromyalgia is an MDI in this case. (Pl. Br. 15-16). She argues that as a consequence of this error, the ALJ erred in his consideration of the medical opinions of Dr. Mitchell and Dr. Erickson. Id. at 16-19.

The Commissioner argues the mere diagnosis of fibromyalgia is insufficient to demonstrate an MDI, but at least one of the two criteria of SSR 12-2p must be met. (Comm'r Br. 6). The Commissioner concedes that Plaintiff has, at least arguably, met the first two factors of the second criterion to establish fibromyalgia but argues she has not shown "other disorders that could cause these repeated symptoms were excluded as the cause of those symptoms." Id. at 8. He argues that the ALJ properly found "no evidence that medical doctors have excluded other impairments as required in SSR 12-2p" and there is no requirement that the ALJ explain specifically how the record did not contain such evidence. Id. at 9 (quoting R. 15). The Commissioner goes on to argue that record evidence supports the RFC assessed, and the ALJ properly considered the medical opinions. Id. at 10-18.

## A.    Step Two Standard

An impairment is not considered severe if it does not significantly limit Plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and

dealing with changes in a routine work setting.  20 C.F.R. § 416.922.  The Tenth Circuit

has interpreted the regulations and determined that to establish a "severe" impairment or

combination of impairments at step two of the sequential evaluation process, plaintiff

must make only a "de minimis" showing.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th

Cir. 1997).  Plaintiff need only show that an impairment would have more than a minimal

effect on her ability to do basic work activities.  Williams, 844 F.2d at 751.  However,

she must show more than the mere presence of a condition or ailment.  Hinkle, 132 F.3d

at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).  If an impairment's

medical severity is so slight that it could not interfere with or have a serious impact on

Plaintiff's ability to do basic work activities, it could not prevent Plaintiff from engaging

in substantial work activity and will not be considered severe.  Hinkle, 132 F.3d at 1352.

When assessing RFC the Commissioner will consider all medically determinable

impairments, even those that are not severe.  20 C.F.R. § 416.945(a)(2).  However, a

claimant's symptoms may be considered only when they reasonably result from a

medically determinable impairment.  Id. § 416.929(b) (symptoms "will not be found to

affect your ability to do basic work activities unless medical signs or laboratory findings

show that a medically determinable impairment(s) is present.").  Therefore, alleged

limitations attributable to impairments which are not medically determinable must not be

considered.  Rutherford v. Barnhart, 399 F.3d 546, 554, n.7 (3d Cir. 2005) (to be

considered, an impairment must be medically determinable, but need not be "severe");

Gibbons v. Barnhart, 85 F. App'x 88, 91 (10th Cir. 2003) ("the ALJ must consider only

limitations and restrictions attributable to medically determinable impairments.").

6

## B.    The ALJ's Step Two Findings

The ALJ found Plaintiff has certain impairments which are severe within the

meaning of the Act and the regulations:

> lumbar spine degenerative disc disease, cervical spine degenerative disc
> disease, lumbar spine and cervical spine radiculopathy, thoracic
> compression fracture, left wrist fracture, carpal tunnel syndrome, opioid
> abuse with other opioid-induced disorder, substance abuse disorder,
> generalized anxiety disorder, and posttraumatic stress disorder (PTSD).

(R. 14-15) (finding no. 2, bold omitted).  She found Plaintiff had certain non-severe

impairments:  "hypertension, chronic left mastoiditis, degloving injury to the anterior

scalp, anemia, and migraine headaches."  Id. at 15.  Finally, she explained her finding

that fibromyalgia is not an MDI in this case:

> Pursuant to SSR 12-2p, the undersigned finds fibromyalgia is not a
> medically determinable impairment.  The claimant was diagnosed with
> fibromyalgia in January 2018 (Exhibit 8F at 6).  However, the record does
> not confirm that the claimant has the requisite number of tender point
> findings (or any tender points) and there is no evidence that medical doctors
> have excluded other impairments as required in SSR 12-2p.  Thus, this
> reported history does not comport with the requirements set forth in either
> SSR 12-2p or 96-4p that requires [sic] that an "impairment" must result
> from anatomical, physiological or psychological abnormalities that can be
> shown by medically acceptable clinical and laboratory diagnostic
> techniques.  Consequently, the undersigned finds that this impairment does
> not meet the requirements set forth by the Social Security Administration
> needed for the determination that fibromyalgia is a medically determinable
> impairment.  Nevertheless, the associated symptoms are contemplated by
> other diagnoses of record and accounted for in the residual functional
> capacity.

Id.

## C.    Analysis

As the parties agree, SSR 12-2p contains two sets of criteria for determining

whether a claimant has an MDI of fibromyalgia; the 1990 American College of

Rheumatology (ACR) Criteria for the Classification of Fibromyalgia, and the 2010 ACR

Preliminary Diagnostic Criteria.  SSR 12-2p, <u>Titles II and XVI: Evaluation of</u>

<u>Fibromyalgia</u>, 2012 WL 3104869, at *2-3 (SSA July 25, 2012).  The 1990 Criteria are

not at issue here—Plaintiff does not claim she meets those criteria and argues only that

the ALJ did not consider (at least not adequately) the third factor of the 2010 Criteria.

The 2010 Criteria require

1.  A history of widespread pain;

2.  Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

3.  Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

<u>Id.</u>, 2012 WL 3104869 at *3 (footnotes and parentheses omitted).

The SSR explains what is anticipated to show the third factor—that other disorders

were excluded:

Other physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from FM [(fibromyalgia)]. Therefore, it is common in cases involving FM to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs. Laboratory testing may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor).

<u>Id.</u>, 2012 WL 3104869 at *3 (footnote 7 omitted).

As the Commissioner points out, the ALJ specifically found "there is no evidence that medical doctors have excluded other impairments as required in SSR 12-2p." (R. 15). Plaintiff implies a case to the contrary—that medical doctors considered and excluded other impairments as the causes of her symptoms, signs, or co-occurring conditions.

> Dr. Ericksen conducted a thorough examination and reviewed imaging of [Plaintiff's] spine. While he diagnosed cervicalgia and lumbago, he further elaborated by stating "[h]onestly this pain feels more like fibromyalgia. There is no place in the spine that can result in this kind of diffuse neck and back pain."

(Pl. Br. 15) (quoting R. 454). She continues, "Dr. Mitchell obtained laboratory testing to include CBC/DIFF, CMP, ESR, CRP, and RF, after which she concurred with Dr. Ericksen's diagnosis of fibromyalgia." Id. (citing R. 536, 542).

The problem with Plaintiff's implied case is that the implied conclusion is not compelled by the evidence. In his treatment of Plaintiff on May 25, 2018, Dr. Erickson did not exclude cervicalgia and lumbago or any other impairment as the source of Plaintiff's pain. Rather, he diagnosed cervicalgia and lumbago and did not test to exclude any other source. Dr. Erickson's feeling that Plaintiff's pain may result from fibromyalgia is not a diagnosis of fibromyalgia and does not qualify fibromyalgia as an MDI. Moreover, the record does not reveal that Dr. Erickson considered any of Plaintiff's other signs, symptoms, or co-occurring conditions. On April 16, 2018, a month before Dr. Erickson treated Plaintiff, Dr. Mitchell noted that Plaintiff "has an appointment with the orthopedic" (presumably Dr. Erickson) and (apparently) ordered laboratory testing, some of which SSR 12-2p suggests may be used to exclude other

9

impairments—"CBC/DIFF, CMP, ESR, CRP, and RF" (complete blood count,

erythrocyte sedimentation rate, and rheumatoid factor).  (R. 536).  However, nowhere in

this treatment note is there an indication Dr. Mitchell intended to use the testing to

exclude certain impairments or to confirm a diagnosis of fibromyalgia.  On May 1, 2018,

still three weeks before Dr. Erickson examined Plaintiff, Dr. Mitchell documented

another visit with Plaintiff.  (R. 541-42).  In her "Assessment & Plan," among other

comments she stated, "Fibromyalgia," apparently a diagnosis, but without further

explanation.  (R. 542).  Although Dr. Mitchell may have diagnosed fibromyalgia, there is

simply no mention or discussion of the bases of this diagnosis and no indication that she

applied consideration in accordance with either of the criteria for diagnosing

fibromyalgia as discussed in SSR. 12-2p.  Moreover, despite Plaintiff's assertion that Dr.

Mitchell "concurred with Dr. Erickson's diagnosis of fibromyalgia," that is not a

possibility because Dr. Erickson did not examine Plaintiff until three weeks later on May

25, 2018.

While the possibility exists that Dr. Mitchell or some other physician who treated

Plaintiff excluded other impairments as the cause of Plaintiff's signs, symptoms, or co-

occurring conditions and the record evidence might be used to infer such an exclusion,

the record evidence does not compel it.  The record evidence supports the ALJ's finding

that "there is no evidence that medical doctors have excluded other impairments as

required in SSR 12-2p."  (R. 15).  Moreover, the ALJ specifically noted that the

symptoms alleged relate to other MDI in the record and she had accounted for them in the

RFC assessed.

10

Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Plaintiff's appeal to J.M.V. v. Berryhill, No. 18-1202-JWB, 2019 WL 2393165, at *4 does not change this result. In that case the Plaintiff alleged fibromyalgia as one of her impairments but the ALJ did not consider whether fibromyalgia was an MDI in that case. Id. The Commissioner argued the ALJ's failure to consider fibromyalgia was harmless error, but the court found it was not harmless. Id. Here, the ALJ specifically considered and discussed the evidence and diagnoses pertaining to fibromyalgia.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 3, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**

11